```
             UNITED STATES DISTRICT COURT
                DISTRICT OF MINNESOTA
              Civil No. 04-1172(DSD/SRN)
```

Jacquetta McCabe,

       Plaintiff,

v.                                                          **ORDER**

City of Minneapolis,
Rocco Forté and
R.T. Ryback,

       Defendants.

    Albert T. Goins, Sr., Esq., Joanna L. Woolman, Esq. and Goins & Wood PC, 301 Fourth Avenue, Suite 378, Minneapolis, MN 55415, counsel for plaintiff.

    Mary E. Briede, Esq., Susan E. Ellingstad, Esq. and Lockridge, Grindal & Nauen, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55410k counsel for defendants.

This matter is before the court upon defendants' motion for summary judgment.  Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendants' motion.

**BACKGROUND**

This is an employment discrimination action under Title VII of the Civil Rights Act of 1964,[1] and the Americans with Disabilities

---

[1] Under Title VII, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any
(continued...)

Act of 1990 ("ADA").[2]  Defendant City of Minneapolis ("City") has employed plaintiff Jacquetta McCabe since 1991 in various offices and departments, including the offices of defendant Mayor R.T. Rybak and defendant Fire Chief Rocco Forté.  Plaintiff alleges that the elimination of her position at Mayor Rybak's office was the result of race discrimination.  She also alleges that the City and Forté unlawfully eliminated her position at the Minneapolis Fire Department, subjected her to a hostile work environment and failed to accommodate her disability.

Plaintiff worked at the mayor's office as a receptionist from 1998 until February 7, 2002.  Soon after Rybak took office as mayor in January of 2002, city-wide budget cuts were implemented.  The mayor's office was required to reduce its budget by seven percent. In addition to reducing the salaries of other employees, Deputy Mayor David Fey decided to eliminate plaintiff's position.  Fey's stated reason for his decision was that existing administrative positions could fully absorb the duties of a receptionist.

---

(...continued)
individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).

[2]  The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

After her position was eliminated, plaintiff was placed in the City's Job Bank as a laid-off employee. She continued to receive a full salary and benefits, as well as accrue vacation and seniority. Eventually, plaintiff was placed in the receptionist position at the Minneapolis Fire Department. She trained for the position on May 14 and 15, 2002, and began on May 20, 2002. During training and on her first day of work, plaintiff expressed concern about the air quality in the office. Her concern related to carbon monoxide and fumes from trucks and machinery working nearby on the light rail. As a result, defendant Forté had the air tested and reported to plaintiff that it was within normal limits. Forté also offered to purchase an air filter for her if she told him the type of filter recommended by her doctor. She never provided him such information, and Forté never purchased a filter.

One of plaintiff's duties was to deliver mail within the fire department. On her first day of work, plaintiff requested that she be provided a mail cart from which staff could retrieve their mail. Forté replied that he would first see how it worked out with the existing system. On June 24, 2002, plaintiff told her supervisor, Carolyn Davidson, and Human Resource Generalist Lasamy Mila that the air quality in the office caused her headaches, stress and monthly hemorrhaging. She requested a transfer back to the Job Bank. After making inquiries, Mila told McCabe that she could not return to the Job Bank because her position had not been

eliminated. However, in response to plaintiff's medical complaints, Forté scheduled her for a fitness-for-duty examination with a City doctor.

Accordingly, plaintiff was examined by Dr. Richard Hirt on June 27, 2002. During the examination, plaintiff described her air quality concerns and her diabetic condition, which allegedly caused her to be late to work. Based upon the examination and a letter from her personal doctor, Dr. Hirt concluded that plaintiff's air quality complaints and tardiness to work had no medical basis. However, he recommended that plaintiff undergo a psychological fitness-for-duty examination. Accordingly, Forté arranged for her to be examined by a psychologist, Dr. Philip L. Sarff. Following the examination, Dr. Sarff concluded that plaintiff had no mental health disorders that would prevent her from doing her job.

Between May and November of 2002, Davidson repeatedly spoke to plaintiff about her failure to properly distribute office mail. In August of 2002, additional job performance issues arose concerning plaintiff. First, Davidson asked plaintiff whether she had taken a particular call that resulted in a complaint about the way the call was handled. Plaintiff denied taking the call, and the issue was dropped. Second, plaintiff was often late or absent. Forté believed that she might have been abusing the sick leave policy

because she tended to take sick leave on Fridays and Mondays. As a result, he asked her to bring a note from her doctor when she used sick leave in the future.

On September 3, 2002, plaintiff complained to the City's Human Resources Department ("HRD") about the way she was treated in the fire department. Approximately three weeks later, however, she requested that HRD cease its investigation. On November 12, plaintiff again requested a mail cart, stating that she had trouble walking due to her diabetes. Dr. Hirt examined her again the next day and concluded that her request was reasonable. Forté immediately reassigned the mail delivery duties to other staff.[3]

On December 30, 2002, plaintiff received notice that her position at the fire department would be eliminated in 2003 due to budget cuts. Approximately one week later, Forté held a disciplinary hearing to address alleged misconduct by plaintiff, including an unexcused absence and a late arrival by two hours. As a result of the hearing, Forté issued plaintiff a four-hour suspension to occur on January 9, 2003. Immediately after her suspension, plaintiff was placed in the Job Bank. In April of 2003, she began working as a receptionist at the City Attorney's Office.

---

[3] Defendants allege that Forté immediately reassigned mail duties when plaintiff requested the cart on November 12.

Plaintiff brought this action against defendants on March 11, 2004, claiming race discrimination against the City, Mayor Rybak and Fire Chief Forté, as well as disability discrimination and hostile work environment against the City and Forté. Defendants now move for summary judgment on all claims.

**DISCUSSION**

I.  **Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of her claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. Employment Discrimination Claims**

The court examines plaintiff's employment discrimination claims under the burden-shifting analysis first set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973). See Wenzel v. Mo.-Am. Water Co., 404 F.3d 1038, 1040 (8th Cir. 2005) (McDonnell Douglas analysis applies to disability discrimination claims); Wheeler v. Aventis Pharms., 360 F.3d 853, 857 (8th Cir. 2004) (McDonnell Douglas analysis applies to race discrimination claims). The analysis proceeds in three steps. See Wenzel, 404 F.3d at 1040. First, plaintiff must establish a prima facie case of discrimination. See id. If plaintiff succeeds, the burden of production shifts to defendants to articulate a legitimate, non-

discriminatory reason for their conduct. See id. If defendants offer such a reason, plaintiff must then demonstrate that the reason is really a pretext for unlawful discrimination. See id.

### A.   Race Discrimination

Plaintiff alleges that defendants eliminated her positions at the mayor's office and at the fire department based on her race. To establish a prima facie case of race discrimination, plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action and (4) circumstances exist which give rise to an inference of discrimination. Wheeler, 360 F.3d at 857. Plaintiff can prove the fourth element by showing that "similarly situated employees, who are not black, were treated differently." Id. In cases involving a reduction-in-force ("RIF"), however, a plaintiff must come forward with some additional evidence that race played a role in the adverse employment action. See Ahmed v. Am. Red Cross, 218 F.3d 932, 933 (8th Cir. 2000) (citing Herrero v. St. Louis Univ. Hosp., 109 F.3d 481, 483-84 (8th Cir. 1997)).

As to the elimination of plaintiff's job at the mayor's office, defendants argue that she has failed to show that the circumstances give rise to an inference of race discrimination. In response, plaintiff alleges that (1) her receptionist position did not have to be eliminated to meet the budget cut demands and (2) she was the only non-appointed black employee. In other words,

8

plaintiff argues that she has established an inference of discrimination because other employees who are not black were treated differently. However, plaintiff has made no showing that other employees in the mayor's office were similarly situated. To the contrary, she held the only receptionist position, whose duties could be fully absorbed by other administrative positions. Further, plaintiff has failed to make any additional or heightened showing of an inference of discrimination, as required in RIF cases. Therefore, plaintiff has not met her prima facie burden.

Even if plaintiff could establish a prima facie case, she has failed to show that defendants' stated reason for eliminating her position was pretextual. Defendants assert that they eliminated plaintiff's position because the mayor's office had to reduce its budget by seven percent and other administrative positions could fully absorb the receptionist's duties. Defendants also point to the fact that the receptionist position has not been reinstated. A RIF constitutes a legitimate, non-discriminatory justification for the elimination of the position and shifts the burden to plaintiff to show that the proffered justification is pretextual. See Regel v. K-Mart Corp., 190 F.3d 876, 879 (8th Cir. 1999) (RIF is legitimate, nondiscriminatory reason for discharge).

Plaintiff does not dispute the need to reduce the budget, but alleges that a different position could have been eliminated instead. However, the court does not have authority to review the

business judgment of an employer, so long as that judgment does not involve intentional discrimination. See id. at 880 (wisdom of implementing RIF is not reviewable). Because plaintiff has failed to present any evidence of pretext, summary judgment on her race discrimination claim against Rybak and the City is appropriate even if she had made a prima facie showing of discrimination.

As to the elimination of plaintiff's job at the fire department, defendants again argue that she has failed to show that the circumstances give rise to an inference of race discrimination. Plaintiff responds that the four-hour suspension Forté imposed on her demonstrates a discriminatory motive for eliminating her position. However, plaintiff does not challenge the underlying reasons for the disciplinary action. Further, plaintiff has not shown how the suspension evidences an improper motive for the elimination of her position. Without more, plaintiff has failed to establish a prima facie case of discrimination or show that defendants' implementation of its RIF was mere pretext for discrimination. Therefore, defendants are entitled to summary judgment on plaintiff's discrimination claim as to the elimination of her position at the fire department.

**B. Disability Discrimination**

Plaintiff alleges that defendants Forté and the City discriminated against her based on her diabetes. To establish a prima facie case of disability discrimination, plaintiff must show

that (1) she is disabled within the meaning of the ADA, (2) she was qualified for her position and (3) she suffered an adverse employment action because of the disability. See Henderson v. Ford Motor Co., 403 F.3d 1026, 1034 (8th Cir. 2005). A person is disabled if they have a physical or mental impairment that substantially limits one or more major life activities or are regarded as having such an impairment. 42 U.S.C. § 12102(2). A person with diabetes is not automatically considered disabled within the meaning of the ADA. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 483-84 (1999) (such an automatic consideration would be "contrary to both the letter and the spirit of the ADA"). Rather, a diabetic must demonstrate that her condition substantially limits one or more major life activities. Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 724 (8th Cir. 2002).

An employee is "regarded" as having a disability if the employer mistakenly believes (1) that the employee has a qualifying impairment or (2) that the employee's actual impairment substantially limits one or more major life activities. Wenzel, 404 F.3d at 1041. As to the major life activity of working, any perceived or actual inability to perform a single, particular job does not constitute a substantial limitation. 29 C.F.R. § 1630.2(j)(3)(i) (quoted in Wenzel, 404 F.3d at 1041).

Plaintiff has neither alleged nor shown that she is substantially limited in one or more major life activities due to

11

her diabetes.  Rather, she argues that defendants perceived her as disabled because Dr. Hirt concluded that providing her with a mail cart was reasonable.  However, even if defendants perceived plaintiff as unable to deliver mail, the inability to perform a particular job does not qualify as a substantial limitation in the major life activity of working.  See Burrell v. Cummins Great Plains, Inc., 324 F. Supp. 2d 1000, 1017 (S.D. Iowa 2004) (perceived inability to perform particular job based on Type I diabetes insufficient to establish ADA violation).  For these reasons, plaintiff has failed to show that she is disabled within the meaning of the ADA.  Therefore, defendants are entitled to summary judgment on plaintiff's ADA claims.

**III. Hostile Work Environment**

Plaintiff alleges that Forté and the City subjected her to a hostile work environment based on her race.[4]  To succeed on a hostile work environment claim, plaintiff must show that (1) she belongs to a protected group, (2) she was subject to unwelcome harassment, (3) a causal nexus exists between the harassment and the protected group status, (4) the harassment affected a term, condition, or privilege of her employment and (5) defendants knew

---

[4] Plaintiff also claims that defendants subjected her to a hostile work environment based on her disability, but that claim fails because she has not shown that she was disabled within the meaning of the ADA. See supra Part II.B. Even if plaintiff could show that she was disabled, her claim would fail for the reasons stated herein.

12

or should have known of the harassment and failed to take proper action. See Tademe v. St. Cloud State Univ., 328 F.3d 982, 991 (8th Cir. 2003).

To decide whether plaintiff has demonstrated that the harassment affected a term, condition or privilege of her employment, the court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Woodland v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839, 843 (8th Cir. 2002) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-23 (1993)). To avoid imposing "a code of workplace civility," the threshold for actionable harm is high. Woodland, 302 F.3d at 843. "More than a few isolated incidents are required," and the harassment must be so intimidating, offensive, or hostile that it "poisoned the work environment." Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir. 1999) (citations omitted).

Here, plaintiff has failed to show that any alleged harassment is severe or pervasive enough to be actionable. Plaintiff points to one alleged comment made to her by Davidson: "Since you didn't go to the picnic, we're going to make you eat all the watermelon." (McCabe Dep. at 109.) Such a comment does not "poison the work environment" and is not severe enough to be actionable. Scusa, 181

13

F.3d at 967; see Elmahdi v. Marriott Hotel Servs., Inc., 339 F.3d 645, 653 (8th Cir. 2003) (occasional "boy," "black boy" and other racial comments not sufficient).  Plaintiff also alleges that the doctor appointments scheduled by Forté, as well as the disciplinary proceedings, discussions and inquiries concerning her work performance, were meant to harass her and were related to her race or disability.[5]  However, taken as a whole, the alleged harassment is not so intimidating, offensive, or hostile that it unreasonably interfered with plaintiff's work performance.  Further, the doctor appointments scheduled by Forté were in direct response to plaintiff's medically related complaints about air quality, stress and lack of a mail cart.  The court declines to describe an attempt to accommodate an employee as harassment.  Plaintiff has also failed to bring forth any evidence that a causal nexus exists between the activities surrounding her work performance issues and her protected group status.  For all of the above reasons, defendants are entitled to summary judgment on plaintiff's hostile work environment claim.

---

[5] Plaintiff further asserts that defendants prevented or interfered with the investigation of her complaints to the HRD. However, plaintiff provides no evidence or details to support her allegation, and the court will not speculate.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Docket No. 23] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 2, 2005

s/David S. Doty
David S. Doty, Judge
United States District Court
